**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED RENTALS, INC. and | ) | |
| UNITED RENTALS (NORTH AMERICA), INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:14CV1624(WWE) |
| MICHAEL DEMEY, | ) | |
| | ) | |
| Defendant. | ) | DECEMBER 23, 2014 |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to D. Conn. L. Civ. R. 7(a), the plaintiffs, United Rentals, Inc., and United Rentals (North America), Inc. (collectively, "Plaintiff" or "United"), submit this Memorandum of Law in Support of their Motion for Preliminary Injunction.  By way of this Motion for Preliminary Injunction, United requests that the Court enjoin an undisputed violation of a noncompete agreement.  Specifically, United seeks to prevent the defendant, Michael Demey ("Demey" or "Defendant"), from competing with United in an expressly (and narrowly) defined "Restricted Area."   In fact, Demey is currently employed by Reading Tractor and Equipment Company ("Reading"), a competitor of United, directly within the Restricted Area (as that term is defined in his agreement with United).  Notably, Reading holds itself out as a division of Lift Inc., another competitor of United, and operates out of a shared space within the Restricted Area.  (*See*

*http://www.liftincorporated.com/*  *and*  *http://www.liftincorporated.com/aboutus_history.php*;  *see also*

*http://readingeagle.com/money/article/lift-reading-tractor-grow-together&template=mobileart*.)

The requested injunction would require only that the parties live up to their contractual promises. For these reasons, as well as those set forth below, an injunction is appropriate and necessary.

I.      INTRODUCTION & SUMMARY

This is a case about the broken promises and contractual violations of former United employee, Michael Demey ("Demey" or "Defendant"), who, in entering into an employment agreement with United, agreed, among other things, that, if he ever left United, he would (1) keep confidential United's trade secrets and confidential information and (2) refrain, for a limited period of time, from competing within a narrowly-tailored geographic area and from operating on behalf of a competitor and/or contacting United's customers. Despite receiving all of the benefits of his bargain with United, Demey has broken his promises and ignored his contractual obligations, resulting in United receiving *none* of the benefits of its bargain with Demey. Because Demey's breaches are causing, and will continue to cause, United irreparable damage, United seeks immediate injunctive relief from this Court.

Specifically, this case arises out of Demey's calculated breaches of the covenants contained in a confidentiality and non-competition agreement dated November 17, 2003 (the "Agreement") in which he entered with United. (A true and accurate copy of the Agreement is attached to the Declaration of Roger Barr as Exhibit A.) Since he left United, Demey has ignored the restrictive covenants in that Agreement, which puts at risk United's trade secrets and proprietary information. Moreover, Demey's actions enable one of United's competitors, Reading, to unfairly compete with United.

II.     RELEVANT FACTS

United is a Connecticut-based corporation organized under Delaware law and engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Pennsylvania, where Demey operated on behalf United.  United rents and sells, among other things, construction equipment, power tools, aerial work platforms, scissor, aerial and boom lifts, forklifts, generators and light trucks. (*See* Barr Decl. at ¶ 4.) United's corporate headquarters and principal place of business is located in Stamford, Connecticut. United has numerous branch locations throughout North America, including branch facilities in Quakertown, Pennsylvania. (*See* Compl. ¶ 2; Barr Decl. at ¶ 12 (verifying allegation in Complaint).[1])

At all relevant times up until October 24, 2014, Demey served as an outside sales representative for United, and operated out of the Quakertown branch.  During his tenure at United, Demey also served as a branch manager, sales manager, and district sales manager for United.  In his position as outside sales representative, Demey was responsible for meeting directly with United's customers, and generating revenues for United.  Moreover, in addition to rentals, outside sales representatives such as Demey are tasked with offering to sell/selling equipment and tools such as: wheeled skid steers, track skid steers, mini excavators, broom and other equipment attachments, utility vehicles, equipment trailers, and chainsaws and similar tools, within the Restricted Area.  (*See* Barr Decl. at ¶ 6.)

---

[1] Given the verification in Paragraph 12 of the Barr Declaration, United will cite directly to the Complaint, where relevant, going forward.

In furtherance of his responsibilities, United entrusted Demey with access to certain of its confidential information, which was necessary in order for Demey to effectively perform his job duties.  Much of this confidential information is contained on United's computer system, the access to which is password protected and limited to certain employees.[2]

In order to protect its confidential information, as well as its customer goodwill, United presented to Demey, and he agreed to sign, the Agreement dated November 17, 2003, which contained, among other things, a proscription against certain competition and against divulging United's confidential information.

On October 24, 2014, Demey resigned from his employment with United.  Demey is now employed by Reading at its Leesport, Pennsylvania location, directly within the Restricted Area.  (*See* Barr Decl. at ¶ 8; Compl. at ¶ 18.)  Reading is a direct competitor of United in the equipment industry.  (*See* Compl. ¶ 19.)   United understands that Demey now serves as a Branch Manager for Reading's Leesport facility.   In this position, Demey would be responsible for, among other things, its sales representatives who perform many of the same functions for Reading, and for Reading's benefit, that Mr. Demey performed for United, as well as responsible for the sales responsibilities of the Reading branch in general.  (*See* Barr Decl. at ¶ 9.)  Given Reading's location, as well as Reading's recent hiring of Demey in violation of Demey's Agreement with United, there can be no reasonable dispute that Reading competes with United's Quakertown Branch within the Restricted Area.  (*See id.* at ¶¶ 10 -11.)  Thus, Demey is

---

[2]    United utilizes a network database on which it stores and organizes most of its proprietary customer, vendor and equipment information, such as special pricing arrangements and open contracts and bids.

competing with United in violation of Section 2(a) of the Agreement.

United advised Demey that the above-referenced conduct would rise to a level of a violation of the Agreement. Nevertheless, Demey has continued in his employment with Reading.

Demey's employment at Reading is not in dispute. Reading's status as a direct competitor should not be in dispute either. These are all serious concerns to United -- concerns that the Agreement was intended to prevent.

## III.   ARGUMENT

Connecticut courts will enjoin the violation of a restrictive covenant if the movant can establish: 1) irreparable harm; and, 2) either (a) a likelihood of success on the merits or (b) the existence of sufficiently serious questions on the merits to make them a fair ground for litigation combined with a balance of hardships tipping decidedly in favor of the movant. *See Branson Ultrasonics Corp. v. Stratman,* 921 F. Supp. 909, 913 (D. Conn. 1996); *Elizabeth Grady Face First, Inc. v. Escavich*, 321 F. Supp. 2d 420, 423 (D. Conn. 2004) (Underhill, J.) (citing *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).

### A.   United Will Suffer Irreparable Harm in the Absence of Injunctive Relief.

"The term 'irreparable harm' means injury for which a monetary award cannot be adequate compensation." *Minnesota Mining and Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 277 (D. Conn. 2002). Where a restrictive covenant relates to the employment relationship, Connecticut courts have presumed the existence of irreparable harm. *See Mattis v. Lally*, 138 Conn. 51, 56 (1951) (holding that irreparable harm would inevitably

result from a breach of a noncompete agreement); *Gartner Group, Inc. v. Mewes,* No. CV 91 0118332 S, 1992 WL 4766, at *2 (Conn. Super. 1992) (recognizing same). Indeed, Connecticut courts have explicitly held that "[i]rreparable injury and lack of an adequate remedy at law is considered to be automatically established where a party seeks to enforce a covenant not to compete." *Edge Tech. Servs. v. Worley*, No. CV054008278, 2005 Conn. Super. LEXIS 1804 (July 5, 2005) (Lopez, J.) (citing *Sagarino v. SCI Connecticut Funeral Services, Inc.,* Superior Court Judicial District of New Britain, Docket No. 499737 (May 22, 2000, Aurigemma, J.), 27 Conn. L. Rptr. 281, in turn quoting *Lampson Lumber Co. v. Caporale*, 140 Conn. 679, 685 102 A.2d 875 (1954). *See also United Rentals, Inc. v. Frey*, 2011 U.S. Dist. LEXIS 16375 at *27 -29 (D. Conn. Feb. 18, 2011) (recognizing that a "number of Connecticut courts and courts in this district have held that irreparable harm may be assumed in cases where the plaintiff alleges a breach of a restrictive covenant") (and authorities cited therein); *United Rentals, Inc. v. Bastanzi*, 2005 U.S. Dist. LEXIS 45268, *25-26 (D. Conn. Dec. 22, 2005) (and numerous authorities cited therein), *modified only as to requirement of bond by*, 2006 U.S. Dist. LEXIS 5334 (D. Conn. Feb. 8, 2006).

Here, United has demonstrated that Demey is bound by the Agreement and is willfully breaching, and threatening to continue to breach, his obligations under that Agreement.  Demey accepted training, experience, access to United's customers and confidential information, monetary compensation, and other benefits provided by United, and then, immediately after resignation, began directly competing with United within the Restricted Area.

United will be irreparably harmed if Demey is permitted to continue this conduct in violation of his Agreement.  Indeed, Demey expressly agreed that such conduct would cause United irreparable harm.  Specifically, in the Agreement, Demey agreed that:

> *Since monetary damages will be inadequate and [United] will be irreparably damaged* if the provisions of this Agreement are not specifically enforced, *[United] shall be entitled, among other remedies (i) to an injunction restraining any violation of this Agreement (without any bond or other security being required)* by [Demey] and by any person or entity to whom [Demey] provides or proposes to provide any services in violation of this Agreement[.]

(Agreement at § 2(f) (emphasis added).)  Such acknowledgements of irreparable harm may be viewed as an admission.  *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-69 (2d Cir. 1999); *see also North Atlantic Instruments, Inc. v. Haber,* 188 F.3d 38, 49 (2d Cir. 1999) (noting import of language in agreement that breach of confidentiality clause would result in irreparable harm); *United Rentals, Inc. v. Frey*, 2011 U.S. Dist. LEXIS 16375, at *28-29 (giving consideration to same); *United Rentals, Inc. v. Bastanzi*, 2005 U.S. Dist. LEXIS 45268, at *27 ("acknowledgment, if not an admission, is at least evidence and a recognition of the reality that money damages are not sufficient to remedy the loss").

Even if Demey had not agreed that United would suffer irreparable harm, such harm is easily established.  Courts have found a variety of factors to constitute irreparable harm in the employee noncompete context, including the following examples:

- The defendant "soliciting and marketing to United Rental's [*sic*] customers," *Bastanzi,* 2005 U.S. Dist. LEXIS 45268 at *6 (citing *Elizabeth Grady,* 321 F. Supp. 2d at 423 (in turn holding that former employee's competition with plaintiff and solicitation of its customers likely would

diminish plaintiff's existing customer base and decrease its goodwill and that "such damages cannot be repaired with money"))[3];

- The defendant possessing confidential information, soliciting former customers, and/or that the defendant was recruited by the new employer because of the knowledge and experienced he gained while employed by the plaintiff, *Frey,* 2011 U.S. Dist. LEXIS 16375 at *24-25[4].

In this case, the Agreement and Declaration of Roger Barr, as well as additional evidence to be adduced at the hearing, establish that Demey is operating in the same market that he serviced while employed at United and, as such, threatens United's customer relationships.  The harm that United will suffer is increased by the fact that Demey possesses United's confidential information, including information specifically related to the United's customers and their needs.  Moreover, the only reasonable inference is that Reading recruited Demey because of the knowledge and experienced he gained while employed by United – specifically, knowledge of and experience with United's customers in the marketplace, their needs, and their representatives/decision makers.

United need not demonstrate that Demey has in fact used or disclosed United's confidential information or trade secrets, only that he will inevitably disclose them to Reading (or another competitor), or use them himself without authorization, in an effort

---

[3] In *Bastanzi*, Judge Martinez further noted: "[g]iven that the two companies compete, the consequent loss of existing customers and the acknowledgment by the defendant that remedies at law would be inadequate, the plaintiff has established sufficient evidence of irreparable harm to justify the issuance of an injunction." *Id. at *8.*

[4] In *Frey*, Judge Fitzsimmons further noted: "[g]iven that the two companies compete in the [same] business in the restricted area, and based on the consequent loss of business from existing customers and the acknowledgment by the defendant that remedies at law would be inadequate, the plaintiff has adduced sufficient evidence of irreparable harm to justify the issuance of an injunction." *Id.* at *31.

to improve the competitor's business and/or Demey's own future.  *See, e.g., Branson*, 921 F. Supp. at 913-914.  *See also Risdon-AMS (USA), Inc. v. Levine*, No. CV 030181029 S, 2004 Conn. Super. LEXIS 580, *15 (Feb. 10, 2004) (Schuman, J.) (holding that, even where a plaintiff cannot prove actual misappropriation of trade secrets, and even where the plaintiff did not require that its employees sign noncompete agreements, the Court will still enter an injunction based on the threat that defendants "could potentially use [the information]").  As the *Minnesota Mining* court held, enforcement of a contract prohibiting disclosure of confidential information and restricting employment is necessary to prevent the employer from suffering irreparable harm. 191 F. Supp. 2d at 278.  That is because "[l]oss of confidential and proprietary information is not measurable in money damages." *Minnesota Mining*, 191 F. Supp. 2d at 278.

If Demey were permitted to continue employment with Reading within the Restricted Area and divulge or use United's confidential information, there simply would be no way to quantify the immense damage likely to result.  Where, as here, "a high degree of similarity between an employee's former and [anticipated] employment makes it likely that the former employer's trade secrets and other confidential and proprietary information will be used and disclosed by the employee in the course of his new work, enforcement of covenants not to compete and other similar agreements are necessary to protect against such use and disclosure." *Id.  See also Branson*, 921 F. Supp. at 913-914; *Weseley Software Development Corp. v. Burdette,* 977 F. Supp. 137, 146 (D. Conn. 1997) (recognizing same); *Continental Group, Inc. v. Kinsely,* 422 F. Supp. 838, 844-45 (D. Conn. 1976) (same); *United Rentals, Inc. v. Bastanzi,* 2005 U.S. Dist. LEXIS

45268, at *23 (stating that "[g]iven the nature of the plaintiff's customer-driven business, it is reasonable for it to be concerned that an employee with extensive relationships with its customers . . . might be in a position to threaten the business").

Because of the nature of the role in which he now operates for Reading, Demey cannot help but to use or disclose United's confidential information in undertaking his duties.  Demey will have the ability to use United's confidential information himself, in addition to disclosing it to his subordinates or colleagues who are responsible for undertaking sales of competitive equipment within the Restricted Area.  Moreover, Demey clearly had notice, pursuant to the Agreement, that United considered its customer information, pricing information and special pricing arrangements to be confidential information.  Despite that notice, Demey joined United's direct competitor in the Restricted Area, and will have the *responsibility*, to directly oversee the calling upon of customers and the solicitation of business on behalf of Reading.

In light of all of the above, it is clear that United will suffer irreparable harm if Demey is not enjoined.  Demey's conduct is likely to diminish United's existing customer base and decrease United's goodwill, all while inevitably using or disclosing United's confidential information.  Such damage can never be fully repaired with money. *See generally Elizabeth Grady,* 321 F. Supp. 2d at 423.  As such, the Court should find that United will suffer irreparable harm unless Demey is enjoined.

>    **B.**    United Is Likely To Succeed On The Merits.

There can be no doubt that Demey's employment with Reading constitutes a breach of his Agreement.  The Agreement prohibits Demey from being competitively employed in the Restricted Area, and from soliciting or calling upon United customers. Despite those promises, Demey is employed within the Restricted Area, with direct

responsibility over Reading's sales staff that is responsible for soliciting and calling upon customers.  The facts that comprise this breach are undisputed.

There should also be no dispute about the enforceability of the Agreement. Numerous Judges in this District have considered substantially similar versions of the Agreement, and every Judge has found it to be reasonable and enforceable.

Because the Agreement is enforceable and Demey is breaching it, United has demonstrated a likelihood of success on the merits. *Cf. Elizabeth Grady,* 321 F. Supp. 2d at 424 (holding that, because the defendant was competing with her former employer – including taking a position within the prohibited geographic area and soliciting customers – there could be no dispute that the defendant had not complied with the terms of the agreement and that the plaintiff has therefore shown likelihood of success on the merits); *United Rentals, Inc. v. Frey*, 2011 U.S. Dist. LEXIS 16375, at *30 (recognizing same).

This Court should also find the Agreement to be enforceable.  Under Connecticut law, a restrictive covenant not to compete will be enforceable if the restraint is reasonable under the circumstances.  *Weseley*, 977 F. Supp. at 144.  Courts look at five factors to determine whether the covenant is reasonable: 1) the length of time the restriction is in effect; 2) the geographic scope of the restriction; 3) the fairness of the protection afforded the employer; 4) the extent of the restraint on the employee's ability to pursue his occupation; and 5) the extent of any interference with the public's interest. *Minnesota Mining*, 191 F. Supp.2d at 279.

The time restraint is reasonable in light of the circumstances.  Connecticut courts have held that two-year restraints, twice the length as the one at issue in this case, are

reasonable. *Minnesota Mining*, 191 F. Supp. 2d at 279; *see also Express Scripts, Inc. v. Sirowich*, No. CV 020077109S, 2002 WL 31501047, at *6 (Conn. Super. Oct. 24, 2002) (finding a two year restriction reasonable). Demey's temporal restraint, within a defined "Restricted Area," is therefore reasonable. *See, e.g., Stay Alert Safety Servs. v. Fletcher*, No. CV054007660S, 2005 Conn. Super. LEXIS 1915, *3 (July 11, 2005) (approving a 24-month noncompete in a United Rentals agreement, and enjoining defendant for that period). *Cf. Cuna Mut. Life Ins. Co. v. Butler*, No. CV075002153, 2007 Conn. Super. LEXIS 1623, *2, 19 (June 21, 2007) (finding 2-year noncompete reasonable); *Tymetrix, Inc. v. Szymonik*, No. CV064019412S, 2006 Conn. Super. LEXIS 3865, *15 (Dec. 28, 2006) (finding reasonable a 2-year noncompete that applied "anywhere in the continental United States or in any foreign country in which the Corporation shall have sold its Products or Services…"). One-year restraints, such as the one at issue in this case, are regularly determined to be reasonable. *See, e.g., Frey,* 2011 U.S. Dist. LEXIS 16375 at *18*; Bastanzi,* 2005 U.S. Dist. LEXIS 45268 at *22.

The geographic restraint is reasonable, independently and especially under the facts and circumstances of this case. The Restricted Area is defined as "a 100 mile radius of any and all Company locations in which [Demey] performed services for, or had management responsibilities for, at any time during the 24 month period preceding the termination of [Demey's] employment[.]" [Agreement § 2(a)(i)(A).] A radius of that size is regularly found to be reasonable. *See, e.g., Stay Alert Safety Servs. v. Fletcher,* 2005 Conn. Super. LEXIS 1915, *3 (Conn. Super. Ct. July 11, 2005) (200 miles); *see also Minnesota Mining*, 191 F. Supp. 2d at 275 (global restriction); *Aetna Ret. Servs. V.*

*Hug,* 1997 WL 396212 (Conn. Super. Ct. 1997) (worldwide restriction); *Van Dyck Printing Co. v. DiNicola,* 43 Conn. Supp. 191, 198 (1993) (state of Connecticut); *Gartner Group, Inc. v. Mewes*, No. CV91 0118332 S, 1992 WL 4766 (Conn. Super. Jan. 3, 1992), *slip op.* at 4 (Connecticut, New York, and Massachusetts); *cf. Frey* 2011 U.S. Dist. LEXIS 16375 at *11 (50 miles); *Bastanzi* 2005 U.S. Dist. LEXIS 45268 at *6 (75 miles).

Moreover, courts have routinely found such geographic protections reasonable where it concerns the area where the employer conducts business. *See Scott v. General Iron & Welding Co.,* 171 Conn. 132, 137-38 (1976) (upholding state wide noncompete that "employee was prohibited from participating in the management of a business of the type conducted by the [employer]" where evidence demonstrated employer did business in twenty-five to seventy-five towns and customers were located throughout the state); *Weseley Software Development Corp. v. Burdette*, 977 F. Supp. 137, 144 (D. Conn. 1997) (finding that "the geographic scope of the restriction is not overly broad in light of Weseley's business throughout the United States and parts of Canada"); *United Rentals, Inc. v. Bastanzi,* Case No. 3:05CV596 (RNC), 2005 U.S. Dist. LEXIS 45268, at *22 (D. Conn. Dec. 22, 2005) (finding that "[t]he restricted area -- a 75 mile radius of the Gainesville, Florida branch -- accurately captures the market serviced by the plaintiff and thus is precisely drawn to protect its goodwill. An employer can protect its business in the area where it does business") (citations omitted), *modified only as to requirement of bond by*, 2006 U.S. Dist. LEXIS 5334 (D. Conn. Feb. 8, 2006).

The separate prohibition on soliciting or calling upon United customers, contained within the Agreement, is also reasonable and enforceable.   As the Connecticut Supreme Court has expressly held, a covenant not to compete that bars an employee from soliciting the employer's accounts that existed when employee left is not unreasonable due to the lack of a geographic limitation, because, by definition, such a covenant does not seek to protect the employer in areas where it did not do business. *Robert S. Weiss and Associates, Inc. v. Wiederlight*, 208 Conn. 525, 532 (1988).

Any interference with Demey's future opportunities is limited and reasonable. Demey is free to pursue other employment opportunities, utilizing his skills for an organization that is not a competitor with United.   *See Branson*, 921 F. Supp. at 913. Moreover, the restraints are limited in scope and duration.  If Demey wants to work for a competitor, he can work somewhere other than the Restricted Area or wait 12 months. Neither concern outweighs the potential harm suffered by United if Demey is allowed to continue in his conduct.

Finally, affording United protection pursuant to the Agreement does not violate the public interest.  There is no evidence to suggest that enforcement of the Agreement will have a negative impact on the public interest.   Moreover, enforcement of the Agreement will not prevent United's competitors, such as Reading, from continuing their operations. *See Minnesota Mining*, 191 F. Supp.2d at 281.  The restrictive covenants in the Agreement, therefore, are reasonable and should be enforced.

**C.**     United Can Demonstrate The Existence Of Sufficiently Serious Questions On The Merits To Make Them A Fair Ground For Litigation Combined With A Balance Of Hardships Tipping Decidedly In Favor Of The Movant.

If the covenant is not enforced, United will lose the benefit of its customer goodwill, trade secrets and other proprietary information, for which there is no adequate remedy at law.  *See Branson*, 921 F. Supp. at 915.  In addition, United will lose the benefit of its investment in Demey to develop customer goodwill on its behalf.  Reading, not United, would reap the benefits of United's investment of time and money.  As a result, the balance of hardships tips decidedly in favor of United.

As previously stated, Demey is free to pursue a position at any company not competing with United, and the restrictions are limited in geographic scope and duration.  In a similar case, the Court found the balance tipped in favor of the employer where there was no adequate remedy at law for a violation of the restrictive covenant and the former employee had other options.  *See Weseley*, 977 F. Supp. at 147 (involving a covenant restricting competition and trade secret disclosure).[5]  The former employee could use his skills for a non-competing company and was not prevented from ever working for a competitor.  *Id.*  Similarly, Demey can pursue other options that do not involve competition with United, and he will be allowed to work for Reading, or another competitor, at the expiration of the noncompete provisions of the Agreement.

---

[5] *See also Frey*, 2011 U.S. Dist. LEXIS 16375 at n.9 (rejecting "defendant's argument that the standard for a preliminary injunction requires that plaintiff prove three elements: "(1) irreparable harm; (2)likelihood of success on the merits or the existence of a sufficiently serious question on the merits; and (3) the balance of hardships tipping in its favor" (emphasis in original).

**IV.**   <u>CONCLUSION</u>

United has demonstrated that it has been, and will continue to be, irreparably harmed if the Agreement is not enforced.  United is also likely to succeed on the merits.  Moreover, the balance of hardships tips decidedly in favor of United.  Therefore, United respectfully requests that this Court issue a preliminary injunction enjoining Demey from violating his Agreement, including by prohibiting Demey from competing within the Restricted Area and/or soliciting or calling upon United customers, for 12 months, per the terms of the Agreement.  Moreover, this Court should enjoin Demey from disclosing United's confidential information, per the terms of the Agreement.

THE PLAINTIFFS,
UNITED RENTALS, INC.
UNITED RENTALS (NORTH AMERICA),
INC.

By: _____/s/_____
    Brian C. Roche, Esq.(ct17975)
    Gerald C. Pia, Esq.   (ct 21296)
    Roche Pia LLC
    Two Corporate Drive, Suite 248
    Shelton, CT 06484
    Telephone:  203.944.0235
    Facsimile:  203.567.8033
    E-Mail:  broche@rochepia.com
    E-Mail:  gpia@rochepia.com

<u>CERTIFICATION</u>

I hereby certify that, on today's date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

A courtesy copy was sent to Defendant at the address where he was served.


_____/s/_____
Brian C. Roche
Gerald C. Pia, Jr.